# Richmond

## MUTUAL FIRE INSURANCE COMPANY V. TURNER.

November 20, 1913.

1. INSURANCE—*Notice of Assessments—Sufficiency—Custom—Case at Bar.*—Where the by-laws of a mutual fire insurance company are made a part of each policy of insurance issued by the company, and they provide that mailing notice of assessments "to the post-office address given it by the member in the application for insurance (and in case of change of same, such address as the member shall, in writing, furnish the secretary) shall in all cases be sufficient notice to such member," a printed notice, inclosed in an open one-cent envelope, addressed to the member at the address given in the application, is a sufficient notice under the by-law, when the member had not, in writing, furnished the secretary of the company any other address. The fact that the member was absent from home when the notice was mailed, and had left instructions with the postmaster at her home address to forward her mail; that two former notices had been on post-cards, which were forwardable mail matter, but that the notice in the one-cent envelope was not forwardable, does not change the result, as the notice was given in the manner provided by the contract of insurance. The receipt of two notices by post-card was wholly insufficient to justify the member in supposing that the company had adopted as a rule the post-card method of sending notices, and would never employ any other method.

2. INSURANCE—*Notice—Reasonableness.*—If any question of reasonableness of the method of giving notice in the case at bar should have been submitted to the jury at all, it should have been the reasonableness of the course adopted, not of a course not adopted.

3. INSURANCE—*Liens—Forfeiture—Renewal of Policy.*—Where the payment of each annual assessment on an insurance policy is a renewal of the policy, the fact that when the policy was first issued there were undisclosed liens on the property insured did not work a forfeiture of the policy where several annual assessments were paid after the liens were discharged.

Error to a judgment of the Circuit Court of Clarke county on a complaint filed by Harriot S. Turner. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. Moore, Jr., Edward Nichols, Moore, Barbour, Keith & McCandlish,* for the plaintiff in error.

*Ward & Larrick* and *F. B. Whiting,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This suit was brought by Harriot S. Turner to recover of the plaintiff in error $1,000, the amount of an insurance policy against loss by fire issued by it upon certain real estate owned by the plaintiff.

Two defenses were made by the defendant company: (1) That the plaintiff failed to pay an assessment ordered by the board of directors, which was due December 31, 1910, and that after that date, under the terms of the policy, it was suspended and had no force or effect at the date of the loss; (2) that contrary to the plaintiff's statement and representation in her application for the insurance there was, at the time of such application, a lien on the property created by the plaintiff.

There was a verdict and judgment in favor of the plaintiff which we are asked to review.

The defendant is a mutual fire insurance company, organized under a charter granted by the State of Virginia. Acts 1897-8, page 17. The application for the policy sued on contains the following covenant: "That this application and the policy to be issued, embracing the property above

described, shall be taken and construed in connection with the charter of said company, its constitution and by-laws, as embodying the entire final contract between the under-signed and said company." The defendant company has no paid-up capital. Persons insuring pay a premium in advance for the first year's insurance, and also give to the company what is termed a premium note, which is subject to such assessments as may be necessary, in the discretion of the board of directors, to discharge the obligations and liabilities of the company. All persons insured by the company become members thereof, and are bound to the company and to each other to make good their propor-tionate amount (which shall be in proportion to the amount of their several premium notes) of any loss or damage by fire or lightning for which the company is liable. The purpose is not to make money, but, by means of the organization, to secure protection against fire at the least possible cost. To accomplish this, prompt pay-ment of assessments to pay losses is essential. Under the method of operation adopted by the company, all premiums on all policies were calculated to the first day of January every year, and all assessments were made in advance and made payable on or before the 31st day of December of each year, and, unless paid on or before that day, the in-surance became suspended under the provisions of the con-tract.

The sixth by-law provides: "In the event of default in the payment of any assessment which may at any time be made on the premium notes given to and held by this company on or before December 31st of each year, as to the annual assessment . . . then the policy of such delin-quent member shall be suspended and be not binding on the said company until payment of such assessment or assess-ments shall be made"; and further provides: 'But pay-ment of such delinquent assessment or assessments shall in

no case entitle the assured to the benefit of a loss or damage sustained during such suspension'; and provides, further, that notice of such assessment shall be mailed to the assured at least thirty days before the final or last day for payment thereof."

This by-law is enacted in pursuance of the express authority to that effect contained in section 12 of the act of incorporation. Section 11 of the charter provides that the board of directors "shall, before the commencement of each fiscal year, at such time as it deems proper, make an approximate estimate of the amount of money which said company is likely to need during the next fiscal year . . . and how much of said premium note or bond will probably be required to discharge all said liabilities, losses, claims and demands, and shall call on the insured to pay the same by such time as may be specified in the order or by-laws. . . .. Each member shall be notified of the rate of assessment, payment of which is called for, and the time in which it is required to be made, at least thirty days before the final or last day of payment. Mailing such notice to the post-office address given by the member in the application for insurance (and in case of change of the same, such address as the member shall, in writing, furnish the secretary) shall in all cases be sufficient notice to such member."

The application of the insured contains the stipulation and agreement that all the answers to the questions therein propounded shall be construed as material in all cases.

The record shows that on October 7, 1907, George E. Pflaster, acting on behalf of his mother-in-law, the plaintiff in this suit, made application in writing to the defendant company for insurance to the amount of $1,000 on a certain tenant house situated on her farm in Clarke county. The policy was issued in the name of the plaintiff, Harriot S. Turner, and a premium note for $200 was

executed in her name by Pflaster.   The cash payment made
at the time of the insurance carried the policy for fourteen
months and twenty-three days, to January 1, 1909; as
already seen, all premiums being calculated to that day in
each year and made payable on or before December 31.
It appears that the insured did not pay her premium as-
sessed in the year 1908 or 1909 until some time after it
was due.   She did, however, subsequently pay it, and
thereupon her policy, which had been suspended, was re-
instated.   The premium assessed the next year (1909)
for the year 1910 was paid within the time prescribed by
the by-laws.   The next premium due was that assessed in
1910 for the year 1911.   This premium was due December
31, 1910, and was not paid, and the policy became sus-
pended.   The premium remained unpaid after the policy
was suspended until January 9, 1911, when the property
insured was destroyed by fire.   It thus appears that the
plaintiff was called upon but three times after she became
a member of the company to pay her annual assessment,
and that on two of these occasions she was in default.   Her
indifference to paying her premiums when due is further
shown by her own testimony, wherein she admits knowl-
edge of the fact that, under the rules of the company, the
premium for 1911 was due and payable on or before Decem-
ber 31, 1910, and yet she took no notice of it, saying: "Why
should I bother myself about their business; it is their
business to notify me, and I don't intend to pay until I
am notified."

In her application for insurance, the plaintiff stated, in
answer to a question, that her post-office address was
"Bluemont, Virginia."   This information for the guidance
of the company was acted upon, and each of the three
notices of assessment that the company was called upon
to give the plaintiff was sent to that address.   The record
shows that the plaintiff had a home at Bluemont, Virginia,

where she lived a large part of the year. Her son-in-law, George E. Pflaster, and his wife, her daughter, lived at this home with her. She also maintained a home in the city of Washington, where she spent a portion of her time. She appears to have spent much of her time traveling about, and was absent from her Bluemont home at the time the third and last assessment was sent to that address, in accordance with the directions contained in her application for insurance. Before leaving home she directed the postmaster at Bluemont to forward her mail. The record shows that her home at Bluemont was on a free delivery route, with a mail box in front of her house with her name upon it, and that the notice now in question was delivered there and received by her son-in-law. The first two notices of assessment sent to the plaintiff were by postal cards, and it appears that it had been the practice of the company generally to send these notices in the form of postal cards. The third notice now in question was mailed to every member of the company, including the plaintiff, in the form of a printed circular enclosed in an open one-cent envelope, with the return request of the company printed thereon. It also appears that postal cards are first-class mail matter, and upon request of the addressee, can be forwarded from one post-office to another, whereas printed notices mailed in unsealed stamped envelopes, with a one-cent stamp on them, cannot be forwarded without the payment of additional postage, but that in all other respects they are treated as first-class matter.

Upon these facts bearing on the giving of the notice by mail, as permitted by the charter, the circuit court, over the objection of the defendant, gave instruction No. 1 for the plaintiff, as follows: "If the jury believe from the evidence that the defendant had, before November, 1910, sent its notices of assessment by postal card, or in such

way that the mail could be forwarded by the local post-master, and such had been its custom and practice, and that the plaintiff had received such notices and they were so stamped that they could be forwarded, and that Mrs. H. S. Turner, the plaintiff, had directed the postmaster at Bluemont to forward her mail to her, and he had forwarded all of her mail which, under the post-office regulations, could be forwarded, and that the defendant company, in 1910, changed its rule, and instead of sending notices of assessment by postal, or in such a way that such notices could be forwarded the addressee, it sent such notices in a printed circular and put it in a one-cent envelope, which was not forwardable under the post-office regulations; and that she, the plaintiff, had no notice of such change and did not receive the printed circular, and she had relied upon the custom and practice of the company, in the ordinary course of business, to mail its assessment notices to its policyholders in first-class mail; and such method was the proper and ordinary course of business to pursue, which reasonable and ordinary business prudence required, if, because of the change of method of mailing, the notice was not forwarded to and received by the plaintiff, or anyone authorized by her to receive the same, then this change of method of mailing was not sufficient, and is not a good defense to this action."

We are of opinion that this instruction is erroneous and should not have been given. It ignores the contract between the parties, which was, that "mailing such notice to the post-office address given by the member in the application for insurance (and in case of change of the same, such address as the member shall in writing furnish the secretary) shall in all cases be sufficient notice to such member." Charter, section 11.

It is not pretended that the plaintiff ever intimated to the company, in writing or otherwise, that she had changed

her post-office address as given in her application. This provision of the contract shows that it was within the contemplation of the parties that, if the insured changed her post-office address, it was her duty to notify the secretary of the company, so that notice could be sent her without extra expense. Giving notice in writing to the secretary of the company of any change in the plaintiff's post-office address was, under the express terms of the contract, essential in order to impose any duty upon the company with respect to such new address. The company had no knowledge that the plaintiff was absent from home or that she had instructed the postmaster at Bluemont to forward her mail, and if it had known these facts it would have been under no contract obligation to put sufficient postage upon the notice to enable the postmaster to forward the same to such address as the plaintiff might direct. The company discharged its entire contract obligations with respect to this notice when it placed the envelope enclosing the same in the post-office at Waterford, Va., its home office, with sufficient postage thereon to secure its transmission to the post-office at Bluemont, Va., the post-office address given by the plaintiff in her application.

The facts do not justify the suggestion of this instruction—that the jury might consider whether the defendant had waived its contract rights by some previous habit of the company to send out notices by postal card, or that the company had changed its rule with respect to mailing notices by postal card. The contract by which the parties are bound contains no provision obligating the company to send these notices by postal card, or in any other designated way. The evidence does not show any rule of the company on the subject, nor does it establish any custom with respect to the method. So far as the plaintiff is concerned, she had only received two notices prior to the one in question, which was wholly insufficient to justify her

in supposing that the company had adopted as a rule the postal card method of sending notices, and would never employ any other method.    This instruction is further erroneous in submitting to the jury the question whether or not mailing notices by first-class mail was the proper and ordinary course of business to pursue, which reasonable and ordinary business prudence required.    If any question of reasonableness should have been submitted to the jury at all, it should have been the reasonableness, not of a rule that had not been followed in the case then before them, but the reasonableness, under all the circumstances, of the method which was followed.    It was, however, not a question of the reasonableness of either method.    The only question was whether or not the defendant had deposited the notice in the post-office with sufficient postage paid thereon to insure its delivery at the post-office which the plaintiff had given.    This was all that the contract required and all that the plaintiff was entitled to demand.

The converse of the propositions contained in instruction No. 1 for the plaintiff is contained in the following instructions asked for by the defendant, which the court refused to give:

"L.  The court instructs the jury that if they believe from the evidence that the plaintiff, at the time of her application for the policy in litigation, either by herself or through her agent, gave as her post-office address Bluemont, Virginia, and that she has not since, by written notice to said company, directed a change to be made in such address; and if they further believe from the evidence that on or before the 30th day of November, 1910, a notice setting forth the rate of assessment fixed by the board of directors to meet the expenses of the company for the year 1911, and the time by which the assessment was to be paid, was put in an envelope addressed to the plaintiff

at Bluemont, Virginia, and deposited in the post-office at Waterford, Virginia, the place of the home office of the defendant company, for transmission to the plaintiff, duly stamped, and that the plaintiff did not prior to the occurrence of the fire by which the building insured was destroyed pay to the defendant said assessment, then they shall find for the defendant; the court instructing the jury that it is immaterial whether or not said notice was actually received by the plaintiff or not.

"M. The court instructs the jury that, mailing such form of notice of assessment as has been proven to have been used by the defendant company in this case, in giving its members notices of the assessment for the year 1911, enclosed in an unsealed envelope, with a one-cent postage stamp attached, constitutes a sufficient mailing of such notice, if the jury further believe from the evidence that such notice was addressed to the plaintiff at the post-office address furnished to the company in accordance with its by-laws and regulations at least thirty days before the said, assessment became payable.

"N. The court instructs the jury that in the application of the assured for membership in the defendant company, which is the foundation of the policy sued on in this case, the post-office address of the assured is given by her as Bluemont; and the court further instructs the jury that there is no evidence in this case tending to show that said post-office address was subsequently changed by means of notice in writing to the defendant company; and if the jury believe from the evidence that the board of directors of the defendant company fixed the assessment on its members for the year 1911, and that the by-laws of the company prescribed that the same should be paid on or before December 31, 1910; and that on or before the 30th day of November, 1910, the defendant company caused printed notice of the rate of said assessment and the time

fixed for payment of the same to be deposited in the post-office at Waterford, Virginia, addressed to the plaintiff at Bluemont, with sufficient postage thereon to pay for its transmission to Bluemont, Virginia, and that the said plaintiff failed to pay the said assessment prior to the date of the destruction of the insured building, they will find for the defendant, the court instructing the jury for the purpose of this case that it is immaterial whether the said plaintiff ever actually received said notice or not."

Without further comment, it is sufficient to say that these three instructions asked for by the defendant correctly state the law of the case presented by the record, and should have been given.

The action of the circuit court in giving instruction No. 3, asked for by the plaintiff, is assigned as error. That instruction is as follows:

"No. 3. The jury are instructed that if the plaintiff had paid off and discharged the deed of trust on the property in October, 1909, and that thereafter the policy was regularly continued in force by payment of the premium in 1909, and neither since that date nor at the time of the fire was there any lien on the property, the jury are instructed that the existence of the lien at the time of the policy worked no forfeiture thereof."

The objection to this instruction is not well taken. The record shows that the lien which was on the property at the time of the issuance of the policy was paid off on October 27, 1909, and that after it was so paid off the company collected the premium for 1910 and reinstated the policy and assessed it as a policy in force for 1910. Under the constitution and by-laws, which are a part of the contract between the parties, the payment of each annual assessment is a renewal of the policy. When, therefore, the plaintiff paid in 1909 the premium for 1910 it renewed the policy for another year, and at the time the

insurance was thus renewed for the year 1910 there was no lien upon the property and none has been created since.

It is further insisted that the court erred in permitting the witness, George E. Pflaster, who signed the application and the premium note on behalf of the plaintiff, to testify that both the application and the note were in blank when he signed them; and, further, to testify that the word "none," in answer to the question in the application with respect to incumbrances, was not in his handwriting and was not put there at his direction. This evidence was not objected to until the witness had left the stand, when the court was asked to exclude it upon the ground that it was an attempt, by parol evidence, to alter and vary the terms of a written contract.

The evidence was clearly inadmissible. *Southern Mutual Ins. Co.* v. *Yates,* 28 Gratt. (69 Va.) 585. The learned judge of the circuit court recognizes that this evidence was not admissible, certifying in bill of exceptions No. 1 that it was all excluded by instructions Nos. 2 and 3. These instructions do not in terms exclude the evidence, but their effect is to do so. Further consideration of this matter is, however, unnecessary, because the case must be remanded, and, if another trial is had, the evidence objected to will not be admitted.

The judgment complained of must be reversed, the verdict of the jury set aside and the case remanded to the circuit court for a new trial, if the plaintiff be so advised, to be had not in conflict with the views expressed in this opinion.

*Reversed.*