# 𝖘𝖙𝖆𝖚𝖓𝖙𝖔𝖓

PULASKI AND GILES MUTUAL INSURANCE COMPANY V.
MRS. E. C. DOWNS.

September 19, 1935.

Present, Campbell, C J., and Holt, Gregory, Browning,
Chinn and Eggleston, JJ.

The opinion states the case.

*S. B. Campbell* and *George P. Young,* for the appellant.

*Gilmer, Wysor & Gilmer,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This appeal brings under review a decree sustaining a demurrer to and dismissing a bill in chancery filed by Pulaski and Giles Mutual Insurance Company against Mrs. E. C. Downs. The object of the suit is to reform a fire insurance policy issued by the company to Mrs. Downs, and to enjoin an action at law which she had instituted thereon.

■ From the allegations of the bill, which, of course, must be taken as true on a demurrer, the following facts appear:

Pulaski and Giles Mutual Insurance Company, hereinafter referred to as the Association, is a corporation chartered by a special act of the General Assembly of Virginia, approved February, 10, 1900. It is a mutual benefit association organized for the purpose of mutual insurance against fire, the losses being provided for and paid by assessing all of its members for their ratable share thereof in the manner provided in the by-laws. The charter gives to the Association express authority to classify the property which it will insure, and further provides that every person who desires to become a member of the Association shall sign a written or printed application expressing assent to the terms of its charter and by-laws. The Association engages in no business other than the protection of its own members in accordance with the terms and conditions of its charter and by-laws.

Pursuant to the act of incorporation the Association passed and promulgated by-laws, copies of which were sent to all of its members, including Mrs. Downs. Section seven of the by-laws provides:

"But no building shall be admitted for insurance unless it be at least one hundred (100) feet distant from any other building owned or controlled by adjacent property holders, if of wood, or at least fifty (50) feet distant if of brick, stone, cement or metal, and covered with non-inflammable roofing; * * *

"Directors may insure property by special contract against its own fire only, the assured assuming all risks of fire from surrounding buildings."

This provision of the by-laws was expressly explained to Mrs. Downs, and she, therefore, had actual as well as constructive notice of the limitations on the authority of the Association, its directors and agents, in the matter of assuming risks and classifying property.

On May 24, 1920, in accordance with the charter and by-laws, Mrs. Downs signed an application for membership in the Association and for a policy of $1,000.00 on her dwelling house on Max Creek, in Pulaski county. Since this dwelling was within the prohibited distance of 100 feet from buildings owned by an adjacent property owner, the application, in accordance with the by-laws, provided that the said residence should be *insured against its own fire only,*—that is, against fire originating on the premises of Mrs. Downs. This application was approved and accepted and the policy of $1,000.00 issued thereon.

On June 24, 1924, in accordance with the charter and by-laws, Mrs. Downs signed a written application applying for a policy of $1,350.00 on the same property. In this application it was again stated that the property was to be "insured against its own fire only." This application was received by the Association and a policy issued thereon in lieu of the policy dated May 24, 1920, the latter being thereupon surrendered and cancelled.

Although the application expressly stated that the property was to be "insured against its own fire only," which was fully explained and assented to by Mrs. Downs, and although, in view of the proximity of the adjoining property, the by-laws expressly limited the assumption of risk

on this property to fires originating on the premises of the insured, through a mistake or inadvertence of the agent the policy was written without such limitation.

It appears that the same premiums or assessments are charged on policies containing the limitation as to insurance against fires originating on the premises as are charged for the policies issued on property which can be insured against all fires.

A fire, originating on the property of an adjoining landowner, and within 100 feet of Mrs. Downs' dwelling, was communicated thereto and destroyed it.

The Association declined to pay Mrs. Downs' claim for the face of the policy, $1,350.00, on the grounds that there was a mutual mistake in the writing of the policy, and that the Association never intended to assume, had no authority to assume, and its agents had no authority to bind it to assume, the risk of fire from the adjoining property. Thereupon Mrs. Downs instituted an action at law against the Association in the Circuit Court of Pulaski county to recover the face of the policy. The Association promptly filed its bill in chancery in the same court setting out the above facts, asking that the policy be reformed and rewritten in accordance with the application and by-laws of the Association so as to limit the risk assumed to insurance against fire originating on the premises of Mrs. Downs, and praying that the action at law brought to recover the face of the policy be perpetually enjoined.

Mrs. Downs filed a demurrer to the bill, the substance of which is stated in her brief as follows: "That the bill shows on its face that there was not and could not have been a mutual mistake as a matter of law; second, that if there was such a mistake, it was the legal duty of the insurance company to discover and seek to correct it within a reasonable time after the insurance policy was delivered; and it is estopped to come into a court of equity ten years after the policy was delivered and six

months after loss of the property by fire and ask for reformation."

In entering the decree sustaining the demurrer and dismissing the bill, we think the lower court was in error.

The bill further alleges that since the Insurance Company did not keep a copy of the policy issued to Mrs. Downs, it did not have actual knowledge of the omission of the limitation of liability therein until the dwelling was destroyed by fire on January 29, 1934. The petition for appeal admits that the Insurance Company had constructive knowledge of the contents of its entire contract with Mrs. Downs, including the policy issued to her. But appellant insists that the entire contract, of which it had such constructive knowledge, consisted of not the policy alone, but included as well the charter and by-laws limiting the character of the risk to be assumed by the Association.

That the Association had no power to issue this policy can not seriously be questioned. It was not, as the lower court states in its written opinion, "empowered to write fire insurance generally," but was authorized to do so only within certain restricted limits. According to its charter its business was restricted to insuring property, (1) located in the counties of Pulaski and Giles, in the State of Virginia; (2) owned by the members of the Association; and (3) "upon such terms and under such conditions as are hereinafter mentioned or may be fixed by the by-laws of this Company."

According to the express provisions of the by-laws, since Mrs. Downs' dwelling was within 100 feet of a building owned by an adjacent property owner, the directors of the Association were authorized to insure it only against fire originating on her premises, and Mrs. Downs was to assume "all risks of fire from surrounding buildings."

Therefore, the policy, as written without this limitation, insured Mrs. Downs against risks which the Association was powerless to assume because it was expressly prohibited from doing so by its by-laws.

■ It is likewise too well settled for argument that Mrs. Downs was bound by the rules and provisions of the by-laws, and is conclusively presumed to have had knowledge of them and the limitations thereby placed on the power of its agents and employees.

Under the terms of the charter every person desiring to become a member of the Association was required to sign a written or printed application describing the property to be insured, "and expressing their * * * assent to the by-laws of the Company." The policy delivered to Mrs. Downs expressly provided "That both the Company and the insured shall be governed by the charter and by-laws of this Company."

In *Bixler* v. *Modern Woodmen,* 112 Va. 678, 681, 72 S. E. 704, 705, 38 L. R. A. (N. S.) 571, this court said: "A person who takes out a policy in a mutual benefit society becomes a member of the society and is bound by the rules and provisions of its charter and the by-laws lawfully made in pursuance thereof, and is conclusively presumed to have knowledge of them all. *Knights of Columbus* v. *Burroughs' Beneficiary,* 107 Va. 671, 60 S. E. 40, 17 L. R. A. (N. S.) 246, and authorities cited.

"This being so, the insured is charged with knowledge of the limitation upon the powers of the agents of such company found in its by-laws."

See also, *Kennard* v. *Travelers' Protective Association,* 157 Va. 153, 157, 160 S. E. 38; *International Brotherhood of Boiler-Makers* v. *Wood,* 162 Va. 517, 552, 175 S. E. 45.

We applied the same principles to mutual fire insurance companies in *Mutual Fire Insurance Co.* v. *Turner,* 115 Va. 631, 79 S. E. 1067; *Northern Neck Mutual Fire Association* v. *Turlington,* 136 Va. 44, 116 S. E. 363; *Farmers' & Mechanics' Benevolent Fire Insurance Association of Roanoke and Botetourt Counties* v. *Horton,* 157 Va. 114, 116, 160 S. E. 315.

So much for Mrs. Downs' constructive knowledge of the provisions of the charter and by-laws of the Association, of which she was a member.

Furthermore, according to the allegations in the bill, taken as true on a demurrer, Mrs. Downs had actual knowledge of these provisions of the by-laws, which were explained to, thoroughly understood and assented to by her. This being true, she, of course, knew that the policy which she received and had in her possession was not in accordance with her actual agreement with the Association.

It should also be remembered that Mrs. Downs got precisely the protection for which she paid. The premiums or assessments charged her were exactly the same as would have been charged if the policy had been correctly written in accordance with the agreement of the parties. According to her written application she applied for protection against fire originating on her own premises. The Association could give her no greater protection than this because it was prohibited by its by-laws from so doing, since her dwelling was within 100 feet of a building of an adjacent property owner.

If Mrs. Downs' contention prevails, and the Association is estopped because of the negligent mistake of its agent from showing the true intended contract, then Mrs. Downs will be given an unfair advantage over her fellow members of the Association in that she was allowed to have a more hazardous risk, carrying the same rate of assessment as the less hazardous.

Furthermore, if her contention prevails, how will this loss be paid? It cannot be paid out of the surplus or capital of the Association, because it has none. All losses are paid by levying assessments on the members of the Association—that is, her partners in the enterprise of mutual insurance. If assessments to pay this loss were levied on the other members, their reply would be that they could not be called upon to pay an assessment to cover a loss under a policy written contrary to the by-laws. They would point out that the by-laws, of which each member had a copy, expressly provided that dwellings within 100 feet of the buildings of adjacent property

owners were not to be insured against fires originating from such adjacent buildings. Such answer would be a complete defense to these assessments. For how could the court hold that provisions in the by-laws for assessments were binding on the members sought to be assessed, but that the same by-laws were not binding on the one member for whose benefit the assessment was made.

Needless to say a court of equity will not allow Mrs. Downs to claim under the by-laws and enforce the collection from her associates of assessments to pay her loss, and at the same time claim in derogation of the same by-laws when her associates, through the Association, seek to limit her policy to the terms which she intended to make.

Nor can we agree with Mrs. Downs' contention that the Association is estopped by laches from asking for a reformation of the policy.

In *Milligan* v. *Milligan,* 145 Va. 184, 188, 133 S. E. 672, 673, this court, speaking through Judge Campbell, said: "Laches is not necessarily implied from mere lapse of time. To constitute laches there must be a delay that works a disadvantage to another."

And again, in *Camp Manufacturing Co.* v. *Green,* 129 Va. 360, 368, 106 S. E. 394, 397, Judge Prentis said: "The underlying reason for the doctrine of laches is that because of the lapse of time and the death of parties, it is impossible to ascertain all the facts, and therefore it is just to leave the parties in the position in which they have placed themselves."

It is admitted that the Association brought this suit for a reformation of the policy within a short time after it discovered the mistake, even though the property had been destroyed by fire in the meantime. There is no claim that Mrs. Downs has lost any evidence by reason of the lapse of time, or that she has altered her position to her detriment in the meantime. Nor would the fact that the mistake was not discovered until after the loss prevent a reformation of the policy. *Dickenson County Bank* v.

*Royal Exchange Assur.,* 157 Va. 94, 160 S. E. 13, 76 A. L. R. 1209. There is no merit in this contention.

Our conclusion is that the allegations in the bill, if true, entitle the Insurance Company to the relief prayed for, Mrs. Downs applies for a policy insuring her against a limited risk. She had actual and constructive knowledge of the provisions of the by-laws, under the terms of which she was entitled to protection against such limited risk and nothing more. These by-laws were a part of her contract with the Insurance Company as well as a part of her contract with the other members of the Association. She is estopped to contest the insertion in her policy of the provision for limited insurance. Promptly on the discovery of the mistake in the policy the Insurance Company brought suit for a reformation thereof. Mrs. Downs was in no way prejudiced by the fact that the suit was not instituted at an earlier date. The Insurance Company, therefore, is not estopped from showing that the policy was intended to protect Mrs. Downs against only a limited risk.

The decree is accordingly reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*