## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Motors Insurance Corp.

v.

Fidelity and Casualty
Co. of N.Y.

March 27, 1967

Case No. A-8581

BY JUDGE A. CHRISTIAN COMPTON

Attached you will find a copy of the judgment order entered today in favor of the defendant.

The facts of this case, clearly set out in the Stipulations, present this problem: Is there liability in contribution on the defendant insurer to the plaintiff carrier, which has paid three losses, both having issued separate policy contracts providing for comprehensive and collision insurance coverage upon the same vehicle which contracts were in full force and effect at the time of the losses, when subsequent to the third loss, at the insured's request because of a mutual mistake of fact, the defendant deleted, *ab initio*, from its policy the said coverage and when thereafter the plaintiff, with knowledge of such double coverage, adjusts the insured's third claim and pays the amount due? The amounts due for the first two claims (which were not reported to the defendant) were paid by the plaintiff without knowledge of the double coverage. The insured did not present to the defendant a claim for payment of any of the three losses.

The plaintiff's policy contained subrogation and "other insurance" provisions. It argues that when the insured accepted the defendant's policy with the comprehensive and collision coverages therein and when his wife paid the premium eleven days later, a binding contract came into being and, therefore, the attempted "cancellation" more than sixty days after

such payment was of no effect. It further asserts that even though it adjusted and paid the insured's third loss with knowledge of the double coverage, such alleged "voluntary" payment did not destroy its right to contribution from the defendant because policy holders are entitled to prompt service and they should not be delayed in the payment of a loss while two insurers decide which one is to pay.

The defendant takes the position that the evidence clearly shows that a mutual mistake of fact existed between it and the insured in that the parties only intended for liability coverages to be written by the defendant and that when the mistake became apparent to the insured after the third loss, he and the defendant's agent, as they had a right to do, eliminated the comprehensive and collision coverages by issuing a retroactive endorsement thereby reforming the written instrument to comply with the real agreement between the parties. The defendant argues that if it is estopped from taking such action, the result would be to "ram down the insured's throat" a contract which the insured says he did not intend to buy or pay for. Furthermore, the defendant says, assuming such a right of estoppel exists, the insured cannot be compelled to pay a premium for coverage he did not intend to buy.

Moreover, the defendant asserts, assuming such an estoppel might be available to the plaintiff and assuming the plaintiff has a right to pro rate coverage and to decline to pay its insured more than its pro rata share, if with full knowledge of its rights it proceeds to pay the whole loss, it then waives its right to look to the defendant as to the excess.

Finally the defendant says that no right of subrogation exists here because such right as set out in policies of collision insurance apply to subrogation to a tort claim and not to any contractual right its insured may have against someone else. In addition, the defendant says that there is no right here to pass by subrogation because the insured had effectively released the defendant from any liability to him on account of any collision loss by eliminating such coverage retroactive to the inception date of the coverage.

While it is not necessary to the decision because of the view the Court takes of this case, it may be well to comment on the subject of whether the plaintiff has waived any right it may have to contribution in view of the "voluntary" payment of the whole loss when it knew of the dual coverage. The Court agrees with the plaintiff and feels that prompt settlement of legitimate physical damage claims should be encouraged and that a policyholder having double coverage should not be made to await the outcome

of a disagreement between the insurers before his claim is paid. While there is a division of authority on this subject, this sound and reasonable view stands on the basis that "the excess part of the payment made by the pro rata insurer was in effect the payment of part of the sum which the other insurer was required to pay under its policy" and that in making such excess payment, "the other insurer has been relieved of its liability to the extent of such payment, and that to refuse to allow contribution on behalf of the overpaying insurer would allow the other insurer to be unjustly enriched." Couch on Insurance 2d, p. 569. This rule, of course, assumes that the other insurer owes the coverage at the time of the loss.

But should contribution be allowed here? Did the defendant's action after the losses in eliminating the coverage retroactive to the date of the inception of such coverage prevent a recovery in this action by the plaintiff? These questions must be answered favorably to the defendant.

It is perfectly apparent that if the defendant's policy had never provided comprehensive and collision coverage, there could be no recovery by the plaintiff. By the same token, if such coverage which was in existence on the dates of the losses was effectively eliminated *ab initio*, there can be no recovery by the plaintiff. This is precisely the case here.

The evidence leaves no reasonable doubt that a mistake existed in the written instrument delivered by the defendant to the insured. *Temple v. Virginia Auto. Mutual Ins. Co.*, 181 Va. 561, 569 (1943). Under these circumstances the law will reform the written instrument to express the intention of the parties. In *Bankers Insurance Co. v. Henderson*, 196 Va. 195, 205 (1954), the rule is stated, in part, as follows:

> Where an agent is authorized to act in the premises, and through his mistake . . . the policy fails to express the real contract between the parties, or if, by inadvertence or mistake of the agent, provisions other than those intended are inserted . . . there is no doubt as to the power of a court of equity to grant relief by a reformation of the contract . . . In other words, where a policy of insurance does not represent the intention of the parties solely because of some fault or negligence of the agent of the insurer, equity will reform it so as to make it express such intention.

See also *Pulaski v. Downs*, 165 Va. 106 (1935); *Dickenson County Bank v. Royal Exchange Assurance of London*, 157 Va. 94 (1931), *Warner Moore and Co. v. Western Assurance Co.*, 103 Va. 391 (1905). The parties (the defendant and the insured) here have accomplished the reformation by

mutual agreement. Since it has been held in Virginia that the *cancellation* of an insurance policy may be effected by consent (*State Farm Mut. Auto. Ins. Co. v. Miller*, 194 Va. 589 (1953), 10 M.J., *Insurance*, pp. 319 and 320) and since it has been stated that a *reformation* is not precluded by the fact that the policy was changed with the consent of both parties (44 C.J.S., *Insurance*, p. 1113, ftn. 96), it follows that the action of the parties here effectively reformed their contract, regardless of any claimed interest of the plaintiff which it urges became a fixed right at the time of the losses. *Cosmopolitan Mut. Ins. Co. v. Lumbermans Mut. C. Co.*, 274 N.Y.S.2d 26 (1966). As a result of the effective reformation the defendant did not owe comprehensive and collision coverage at the time of the losses in question and the plaintiff's case must fail because the defendant was not a pro rata insurer of the losses.

The plaintiff urges that such a conclusion as is reached here will encourage one insurer to go to the insured after a loss and persuade him to reform his policy in order to relieve that insurer of liability when there is double coverage. Such an assumption has many answers. Each case must be decided on its facts and here there is no evidence of any improper influence exerted over the insured by the defendant. Furthermore, parties who have valid defenses to claims for contribution should not be denied this right because of the possibility of collusion in connection with other such claims.

Because of what has been said above, it is not necessary to comment further on the other defenses raised.