## CIRCUIT COURT OF HENRICO COUNTY

World Insurance

v.

Rita Klein

January 16, 1974

Case No. M-87

By JUDGE E. BALLARD BAKER

World Insurance is asking that a life insurance policy issued May 19, 1960, to Rita Klein, be reformed to state the premium after the 12th year as $415.40, contending that the policy was mistakenly written to state this premium as $208.20. A plea by Mrs. Klein contends that there was no agreement between the parties other than that set out in the policy.

Evidence was heard on November 20, 1973, on the Plea, and counsel have filed memoranda.

The rate book in use by World Insurance in 1960, set an annual premium of $400.40 for this policy after the 12th year, plus $15.00 for double indemnity. Mrs. Klein did not recall the amount of premium discussed before the policy was issued, but she was aware that the premium would be increased after twelve years. The agent does not recall the premium amounts discussed with Mrs. Klein, but says he did use a rate book in the sale. The application signed by Mrs. Klein shows she applied for a modified life policy in the amount of $10,000, with double indemnity, and a "Total Life Prem." of $185.70. (This is the rate book amount for the first twelve years.)

The actual policy was written in the home office in Omaha, Nebraska, and shows a premium of $170.70 for

each of the first twelve years and $208.20 per year there-after, plus $15.00 for the double indemnity provision. In fact, $208.20 is the semi-annual premium.

The annual premium should be $400.40, plus the double indemnity fee.

It is apparent that the person who prepared the policy in the home office mistakenly took the semiannual rather than the annual premium and inserted that as the premium. There is no evidence of any communication from the agent to the home office expressing the amount of the premium, other than the $185.70 shown on the application. From the information contained in the application the Home Office prepared the policy using its rate schedule to record the premium on the policy.

A written instrument can be reformed where there has been a mutual mistake or where there has been a unilateral mistake accompanied by fraud or inequitable conduct of the other party. *Gibbs* v. *Price*, 207 Va. 448 (1966); *Bankers Fire Ins. Co.* v. *Henderson*, 196 Va. 195 (1954). It should appear that the policy, as written, does not express the actual and real agreement of the parties. 43 Am. Jur. 2d, *Insurance* § 358. The purpose of reformation is to make the written document coincide with the actual agreement. Appleman, *Insurance Law*, 7607; Couch, *Insurance*, sect. 66:13; 43 Am. Jur. 2d, *Insurance*, § 356.

To support reformation on the ground of mutual mistake, the proof must be clear and satisfactory, leaving but little, if any, doubt of the mistake. *Gibbs* v. *Price*, 207 Va. 448 at 450. In *Bankers Fire Ins. Co.* v. *Henderson*, 196 Va. 195 at 206, it is written that the evidence must leave no reasonable doubt not only of what the mistake consists, but the correction which should be made. And *Reliance Life Ins. Co.* v. *Gulley*, 134 Va. 468, at 482 (1922), says "There is no reason why a policy of insurance should stand on a different footing from any other contract."

While this case at this time is on the Special Plea filed by Mrs. Klein, it is World Insurance that seeks reformation and the burden is on it.

The policy should have been sold and written at the $400.40, premium. It was not written at that figure. Does the evidence show it was sold at that figure?

The agent testified that he used a rate book at the time and "to my knowledge" never offered a policy at a rate different from that specified in the book. He does not remember the premium figure that was discussed, and under "normal procedure in delivering a policy" he would show the insured what he is getting. He recalls nothing unusual about this policy.

The only written reference to a premium is the $185.70, figure in the application. Mrs. Klein was aware that this premium would increase after twelve years, but has no recollection of any specific figures. The policy, as written did show an increase of $37.50 per year after twelve years. The application was dated March 17, 1960. The policy was dated May 19, 1960, and presumably delivered shortly thereafter.

If the agent followed his usual procedure, that is, offer a policy only at the rate book figure and then go over the policy on delivery, he would note something unusual about this policy. His failure to note that the premium written in the policy was unusual supports an inference that he erroneously quoted the wrong premium in the first instance. Assuming that he did follow the usual procedure, his testimony is inconsistent with the contention of the Company that the policy was sold at $400.40.

If the agent did not follow his usual procedure of going over the policy on delivery, the inference is removed; but the premium at which the policy was sold remains unestablished. It is not inconceivable that the agent, using the same rate book that the home office used, made the same mistake. However, it is not really necessary to accept this possibility for Mrs. Klein to prevail. It is up to the Company to prove that the agent sold this policy at $400.40, and the evidence is not sufficient.

Nor can it be said that the premium as stated was an obvious error that Mrs. Klein should have noted. Insurance rates are not of common knowledge and the mathematical fact that her expectancy would only provide total premiums of around $7,400, does not seem enough to make this fall in the the obvious error category.

Cases cited by *World* are distinguishable. In *Schaeffer v. California-Western*, 69 Cal. Rep. 183, the policy was sold by the insured's father, an experienced agent thoroughly familiar with the policies and who died prior to the

litigation. In *Jersey Interstate* v. *Metropolitan Life*, 247 N.Y.S.2d 97, it appears the Court treated the mistake as a clerical error, and relied upon a prior case allowing reformation for obvious error. Also, it was clear that the person relying on the error could not have been aware of the rates stamped on the policy before it was delivered; unlike here where a sale at the $208.20 premium has not been negatived. In *Pulaski & Giles Mutual Ins. Co.* v. *Downs*, 165 Va. 106 (1935), the policy holder was charged with knowledge of a by-law of the mutual association forbidding insurance such as she obtained. In *Neary* v. *General American*, 1 N.W.2d 908, the agent testified, and the trial court found, that the policy was not issued on the basis claimed by the insured, that the insurer's evidence was, "clear, convincing and satisfactory . . ." and sufficient to overcome the strong presumption that the written instrument correctly expressed the intention of the parties.

It can also be said that cases cited by Mrs. Klein are distinguishable. In *Hayes* v. *Travelers Ins. Co.*, 93 F.2d 568 (10th Cir. 1937), and *National Fidelity* v. *Gerard*, 52 P.2d 1, the insured testified that the figures which appeared on the issued policy, though improper, were the figures upon which the policy was originally sold.

An Annotation at 123 A.L.R. 1058 considers reformation of insurance policies, but cites only two cases relating to premiums. *Donnelly* v. *Northwestern Life Ins. Co.*, 59 F.2d 46 (5th Cir. 1932), allowed reformation to the insurer, but the mistake was clearly shown. *McCuen* v. *Sovereign Camp*, 55 S.E.2d 449 (South Carolina), denied reformation to the insurer. *McCuen* does differ factually from the present case and has not been relied upon by other courts.

There is a presumption that the written policy expresses the agreement of the parties. I do not believe the evidence overcomes that presumption.

Can the policy be reformed on the basis that otherwise Mrs. Klein gets an advantage denied to other policy holders? Section 38.1-52(7) does say that, ". . . any unfair discrimination . . . is an unfair practice." Does denial of reformation offend this statute?

43 Am. Jur. 2d, *Insurance*, § 535, cites *Columbian Nat. Ins.* v. *McClain*, 174 P.2d 348, holding that the fact that the premium rate violates such a statute is

no defense to a suit on the policy. *Hayes* v. *Travelers Ins. Co.,* 93 F.2d 568, *Texas* v. *American National,* 230 S.W.2d 397, and *National Fidelity* v. *Gerard,* 52 P.2d 1, reach a similar conclusion.

The position appears to be that unfair practices statutes which do not say the transaction is void do not result in causing a provision in violation to be void.

*World* cites *Amalgamated Clothing* v. *Kiser,* 174 Va. 229 (1939), and *Pulaski & Giles* v. *Downs,* 165 Va. 106 (1935), to support the position that § 38.1-52(7) should require reformation. In each of those cases the individual became a member of an association and assented to the rules of the association. 174 Va. 235-236; 165 Va. 111-112. The individual could not prevail on a position contrary to the rules. That is not the situation here. Mrs. Klein merely applied for insurance. She did not become a member of World Life as did Mrs. Kiser and Mrs. Downs in those cases.

Nothing in § 38.1-52 says that a discriminatory rate is void.

The result of this leaves the policy, as written, in effect. While this may give to Mrs. Klein more insurance for the premium than other policyholders get, that does not seem sufficient to reform the policy. While World Life has shown that Mrs. Klein, under the policy as written, gets a bargain, it has failed to show that the policy as written is not what she thought she was buying.

If the agent sold her this policy at the rate expressed, the policy cannot be reformed. World Life has not shown otherwise as I believe is required by the cases.

Counsel not having discussed the incontestable clause in relation to the case, that clause is not considered as a basis for this decision. 7 A.L.R. 2d 504.