# Richmond

SALLIE B. TEMPLE, ET ALS. V. VIRGINIA AUTO MUTUAL
INSURANCE COMPANY.

April 26, 1943.

Record No. 2648.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*L. J. Hammack, A. S. Harrison, Jr.,* and *B. A. Lewis,* for the appellants.

*John C. Goddin, John G. May, Jr.,* and *Robert Lewis Young,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

The administrators of the estate of J. R. Temple instituted this suit against the Virginia Auto Mutual Insurance Company to reform an automobile liability insurance policy and to recover liquidated damages on the policy as reformed. From a decree dismissing the bill, the administrators obtained this appeal.

J. R. Temple was a native of Brunswick county, Virginia, and, at the time of his death, was actively engaged in operating several farms and sawmills. He was president of two banks and was interested in a number of other business enterprises.

Walter Turnbull is a native of Brunswick county and, for more than 36 years, has operated an insurance agency in Lawrenceville. In 1938, he was a soliciting agent for the Virginia Auto Mutual Insurance Company, hereinafter referred to as defendant.

On May 27, 1938, Turnbull interviewed Temple in his store near Brodnax, Virginia, for the purpose of selling him insurance. During the interview, Temple took three automobile liability insurance policies, issued by the State Farm Mutual Insurance Company, out of his safe, and agreed that Turnbull should write three new policies insuring the three motor vehicles. The policies were to become effective on the dates that the three old policies expired. The descriptions of the motor vehicles and the dates on which the policies in the State Farm Mutual Insurance Company expired were as follows:

| Trade Name | Year Model | Body | Engine No. | Expiration date of policy |
|---|---|---|---|---|
| International | 1936 | ½-ton pick-up | HD24452 | May 22, 1938 |
| Chevrolet | 1936 | Sport Sedan | M6337033 | Sept. 19, 1938 |
| Plymouth | 1937 | Deluxe Coupe | PH-93147 | June 12, 1938 |

Turnbull examined the old policies, and copied the descriptions of the different motor vehicles insured and the dates

on which the policies expired for the purpose of inserting the descriptions in the applications and the policies to be issued by defendant.

The policy on the International ½-ton pick-up had expired on May 22, 1938, five days before, but, under the provisions of the old policy, the insured had ten days grace in which to pay the premium and extend the insurance for six months. Inasmuch as Temple decided not to renew the policy issued by the State Farm Mutual Insurance Company, Turnbull agreed to furnish temporary insurance, called a "binder," which would cover the truck from May 27 until a regular policy could be written and issued.

In addition, Temple purchased from Turnbull a fire insurance policy on one of his many buildings. The premiums on the three policies purchased were as follows:

Premium on International ½-ton pick-up. . . . $27.27
Premium on Plymouth coupe. . . . . . . . . . . . .  29.25
Fire Insurance premium on building. . . . . . . .   5.70

$62.20

Temple paid these premiums in full. He gave a check for $37.20, and, at Turnbull's request, gave him a credit of $25 on a note which Turnbull owed him. Temple did not pay the premium on a new policy covering the Chevrolet sedan as the existing policy did not expire until September 19, 1938.

Turnbull returned to his office in Lawrenceville, and, on May 28, wrote Temple the following letter:

"As per my conversation with you yesterday in regard to liability policy covering your Chevrolet Sport Sedan I am enclosing copy of binder which I placed last night and this will take care of you until I can get the policy issued.

"This binder is to cover the Chevrolet that was insured in the State Farm Mutual, which policy expired on May 22nd.

"As soon as I get this policy, I will bring it over to you, which will only be a few days. In the meantime, I will see that both of your cars are fully protected."

This was the status of the transactions between the parties on June 11, 1938, when Temple, while driving the International ½-ton pick-up, was killed in a collision with a Ford automobile operated by J. A. Moses. One of the six passengers in the Ford car was killed. Each of the others was seriously injured, and the two vehicles were totally demolished. The administrators of the Temple estate were unable to find among the papers of decedent a liability policy insuring the International ½-ton pick-up. They notified the State Farm Mutual Insurance Company of the accident, as they knew Temple had purchased other insurance from this company. This company investigated the accident, later ascertained that the policy covering the truck issued by it had expired, and so notified the administrators.

The administrator of the passenger who was killed and five other occupants of the Ford automobile instituted separate actions against Temple's estate. The administrators of Temple's estate, under the impression that there was no liability insurance on the pick-up truck, employed three local attorneys to defend the actions. Two of the cases were appealed to this court. See *Temple* v. *Moses*, 175 Va. 320, 8 S. E. (2d) 262; *Temple* v. *Ellington*, 177 Va. 134, 12 S. E. (2d) 826. On substantially the same evidence, one jury returned a verdict against the Temple estate and one jury returned a verdict for the estate. Each of these verdicts was sustained by this court on the ground that the conflict in evidence presented a jury question. The administrators compromised the other four actions. The total amount expended in settlement of all claims against the estate resulting from the accident was $18,906.34.

Turnbull's letter to Temple (quoted above) was not found among decedent's papers until April, 1940. The contents of this letter convinced the administrators that Temple had purchased a liability insurance policy on the International ½-ton pick-up truck. They obtained from the State

Farm Mutual Insurance Company a copy of the policy on this truck which had expired on May 22, 1938. When the administrators and their attorneys confronted Turnbull with a copy of this old policy, Temple's cancelled check, dated May 27, 1938, payable to Turnbull for $37.20, the $25 credit on his note bearing the same date, and the letter dated May 28, 1938, Turnbull admitted that one of the two automobile liability insurance policies that he had sold Temple on May 27 was intended to cover the International ½-ton pick-up truck. He stated that, due to an error in his office, the binder and the policy contained a description of the Chevrolet sedan when, in fact, they should have contained a description of the International ½-ton pick-up truck.

Turnbull testified that, on his return to his office after the interview with Temple on May 27, 1938, he signed a blank binder and instructed a young lady employed in his office to fill in the binder with a description of the International ½-ton pick-up truck but for some unexplained reason she inserted in the binder a description of the Chevrolet sedan, and either that day or the next morning typed the letter of May 28 to Temple. Turnbull signed the letter and enclosed the binder with the incorrect description without noticing the mistake. He discovered the mistake in the description of the vehicle soon after Temple was killed, but did not disclose to the administrators the existence of the mistake.

Some time after June 11, 1938, Turnbull delivered two liability policies to Temple's administrators. One was dated June 2, 1938, and insured the Chevrolet sedan; the other was dated June 12, 1938, and insured the Plymouth coupe. At the time that he delivered these policies to the administrators, he did not inform them of his previous agreement with Temple, nor did he tell them of the mistake which he knew he had made in writing the insurance policy on the Chevrolet instead of on the International ½-ton pick-up truck. His only explanation for this silence is that he did not think anything could be done about it.

Turnbull further testified that, on June 11, 1938, he visited the scene of the accident and ascertained that Temple and a number of other people had been seriously injured and the vehicles wrecked. Upon returning to Lawrenceville, he, by telephone, notified defendant at its home office in Richmond, Virginia, of the accident and, in the same conversation, told it that he thought the motor vehicle operated by Temple and involved in the accident was insured by it.

The evidence for defendant is that Turnbull did not inform it of the fact that he had issued a binder on a motor vehicle owned by J. R. Temple. It admits that it issued two policies to J. R. Temple, one insuring a Chevrolet sedan and the other a Plymouth coupe; that, on the morning of June 13, 1938, two of the officers of the company saw an account of the accident, giving the names of the persons killed and injured; that, knowing the company had issued two policies to Temple, they telephoned E. P. Barrow, the company's attorney, in Lawrenceville, to ascertain what motor vehicle owned by Temple was involved in the wreck. When Barrow informed them that it was an International ½-ton pick-up truck, they checked this information with a report made to the Commissioner of Motor Vehicles and then dismissed the matter from further consideration.

Defendant's first contention is that the evidence offered in this case, to establish the alleged mistake, does not meet the high degree of proof required by a court of equity to reform a written instrument.

Different courts have stated in different terms the high degree of proof necessary to obtain affirmative relief in cases of this nature. Suffice it here to say that the party alleging a mistake in a written instrument must show by evidence which leaves no reasonable doubt upon the mind of the court, not only of what the mistake consists, but the correction which should be made. See *Wilkinson* v. *Dorsey*, 112 Va. 859, 72 S. E. 676; 3 Pomeroy's Equity Jurisprudence, 5 ed., sec. 859a.

Judge Lewis, in *Shenandoah Valley R. Co.* v. *Dunlop*, 86 Va. 346, 10 S. E. 239, said that there are two well defined classes of cases in which equity will reform written instruments: "(1) Where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties."

While defendant attacks the credibility of Turnbull, its former agent, the case does not depend solely upon the testimony of this agent. The record discloses that Temple was a successful business man engaged in varied business enterprises, that he knew the necessity of carrying liability insurance, and that he did carry such insurance on all of his motor vehicles. On the 27th day of May, 1938, he placed in Turnbull's hands policies on three of his motor vehicles, which policies contained the trade names of the vehicles, the years in which they were made and the engine numbers, from which the agent of defendant undertook to obtain the necessary information to insert in the new policies. The fact that the exact amount of the premiums was paid on the two automobile policies and one fire insurance policy was evidenced by J. R. Temple's cancelled check and a $25 credit on Turnbull's note bearing same date. The original memorandum taken by Turnbull and filed with his deposition accurately describes the International ½-ton pick-up truck. A copy of the old policy issued by the State Farm Mutual Automobile Insurance Company shows that it expired on May 22, 1938. Another policy issued by the same company on the Chevrolet sedan did not expire until September 19, 1938.

There was no necessity for Turnbull to issue a binder covering the Chevrolet sedan because it was already insured. In addition, this old policy, as well as the policy issued by defendant on the Chevrolet, contains the following provision: "No recovery shall be had under this policy if at the time a loss occurs there be any other insurance, whether

such other insurance be valid and collectible or not, covering such loss, which would attach if this insurance had not been effected." If a mistake was not made, then, between June 2 and September 19, 1938, there was no valid insurance on the Chevrolet sedan because the provision against other insurance cancels each policy, although Temple had paid premiums for the liability insurance on the International ½-ton pick-up truck and on the Chevrolet sedan.

Turnbull had had more than 36 years of experience in active insurance business. He could not have been ignorant of this provision in the two policies. It cannot be presumed that he intended to perpetrate a fraud on Temple. His letter of May 28, considered with other corroborating circumstances, is sufficient to establish the fact that a mistake was made by Turnbull in the description of the motor vehicle intended to be insured, both in the binder and in the policy actually issued.

Defendant's second contention is that Turnbull's transactions with Temple are not binding upon it.

It is conceded that Turnbull was not the general agent of the defendant. However, he was its authorized agent to solicit and procure applications for insurance in accordance with rules and regulations prescribed by it.

The primary purpose of defendant, in executing the written contract of agency, was to duly authorize Turnbull, as its agent, to procure applications for liability insurance policies and to receive payment of the premiums for and in its behalf. One of the provisions of this contract authorizes the agent "to act as such for the purpose of procuring for the Company applications for insurance policies * * * and to collect premiums due the Company" in accordance with prescribed rules and regulations. When Turnbull interviewed Temple on May 27, 1938, he was acting in strict compliance with his written authority. While so acting, he obtained from Temple the correct and accurate descriptions of the motor vehicles to be described in the applications and the policies. When Turnbull induced Temple to pay, and Turnbull accepted payment of the exact

amount of the insurance premiums for two liability policies to be issued by defendant, Turnbull was acting strictly within the written authority given him by defendant. The mistake was made by Turnbull after he left Temple and while he was in his own office transcribing the descriptions of the motor vehicles from one paper to another for the purpose of sending the information to defendant. The mistake occurred not only while Turnbull was acting within the apparent scope of his authority, but while he was acting within the express written authority given him to act for the company. *Green v. Southwestern Voluntary Ass'n*, 179 Va. 779, 20 S. E. (2d) 694. The mistake of the agent in transacting this business was the mistake of the company.

Defendant's third contention is that to reform this contract is tantamount to holding it liable for a verbal contract of insurance made by Turnbull with Temple.

A number of cases are cited to support the contention that a verbal contract of insurance made by a soliciting agent is not binding upon the principal. These authorities are not pertinent to the issue here presented. The insured gave the soliciting agent the correct description of the property to be insured. The policy was issued, but the property insured, through gross carelessness of the agent, was erroneously described.

In *Massachusetts Bonding, etc., Co. v. Piedmont Service Station*, 165 Va. 167, 173, 181 S. E. 397, the facts were that the owner of a truck gave an insurance agent the correct description of the truck to be insured, but the agent, in writing the application and the policy, described another truck then owned by the insured but not in use. In an action on the policy, the insurance company defended on the ground that the policy, as written, was the contract between the parties and that it did not cover the truck which was involved in the accident. Mr. Justice Eggleston, speaking for the court, said: "It is clear that the failure of the policy to cover the 1929 truck, in the first instance, was due to the mistake of Wilson, the local agent for the insurance company, in preparing the policy. It is likewise

true that the local agent for the insurance company failed to carry out the instructions of the service station and failed to transfer the policy back to the 1929 truck after it had been restored to service in May, 1933. These mistakes of the local agent were the mistakes of the insurance company. What the agent knew, the insurance company itself knew, and what the agent failed to do, the company failed to do. *Royal Indemnity Co. v. Hook*, 155 Va. 956, 965, 157 S. E. 414. Therefore, to uphold the contention of the insurance company would be to allow it to take advantage of its own mistake."

Defendant further contends that decedent and his administrators were guilty of negligence in the failure to notify it of the mistake until May, 1940, approximately two years after it occurred, and that this negligence estops the administrators from obtaining the relief sought in this suit.

The burden was on defendant to prove that Temple or the administrators of his estate failed to notify it within a reasonable time after either of them discovered or, in the exercise of reasonable care, should have discovered the mistake. Defendant has not borne this burden. Indeed, it introduced no evidence on the issue.

The evidence for the administrators is that, between May 27 and June 11, 1938, Temple was away "sometime" on a visit. Whether he received the Turnbull letter before he left or after his return is not shown. The mistake is not apparent on the face of the letter. A comparison of the letter with the motor vehicle described in the old policy, which expired on May 22, 1938, would reveal the mistake, but this old policy was not found among the papers of the decedent. The evidence tends to show that Turnbull not only made memoranda of the descriptions of the vehicles but took the policies themselves with him to his office on May 27, 1938. If Temple knew that the old policy which expired on May 22 insured the International ½-ton pick-up truck, then the mistake would have been apparent to him from reading the letter. His failure, if he failed, to remember this fact, under the circumstances, is not negligence.

The statements in the letter that the binder covered the same motor vehicle which was covered in the old policy expiring on May 22 and the statement that "I will see that both your cars are fully protected," had a tendency to lull Temple into a feeling of security. The agent, in the course of soliciting business for his principal, made a definite promise that he would see that the proper applications were filed and that the proper insurance policies would be issued to become effective on the dates agreed upon.

The administrators testified that the decedent had no system of bookkeeping or filing; that he was more than 70 years of age and had a great many papers in different places and covering many and extensive transactions; that the Turnbull letter was accidentally found in an old personal file among many other old and personal papers of decedent. When the administrators ascertained the contents of this letter, they wrote to the State Farm Mutual Insurance Company for a copy of the old policy, and immediately thereafter took the letter, the copy of the old policy and the cancelled check to their attorneys, who then ascertained the facts from Turnbull. Immediately after this interview, on May 9, 1940, one of the attorneys wrote defendant, informing it of the mistake and demanding that it immediately pay a $10,000 judgment against the estate which this court had affirmed, and that it assume responsibility for defending the five other actions, one of which was pending in this court. Defendant did not reply to this letter. However, defendant thereafter was duly notified of the different steps taken by the administrators to settle the actions pending against them based on the alleged negligence of decedent. The administrators had no cause to believe that a mistake had been made until they discovered the Turnbull letter. As soon as this letter was found and it was definitely ascertained that a mistake had been made, defendant was promptly notified.

Defendant's final contention is that, even if the administrators are entitled to have the policy reformed, they are not entitled to recover because they failed to comply with the

terms of the policy as reformed. This contention is based on the fact that the administrators did not give defendant written notice of the accident and did not send it the different legal processes served upon them by the parties injured in the accident.

It is well settled that notice of an accident and information of any demands made upon, or actions brought against, an assured are reasonable provisions to be inserted in a liability insurance policy. Performance of these provisions is usually regarded as a condition precedent to the right to recover on the policy. However, the failure of the administrators to comply with these provisions of the contract stems from the inexcusable mistake of defendant. Defendant's agent not only made the mistake while acting within the scope of his authority, but he ascertained that this mistake was made before the policy was delivered. It was his duty to inform his principal of the mistake, as well as the administrators. It is conceded that he did not inform the administrators of the mistake until after he was virtually forced to do so. To allow defendant to defeat the claims alleged in this suit on the ground that no notice was given it, would permit it to profit by its own wrong. Defendant is estopped by its own action from relying on the non-performance of these stipulations by the administrators.

The decree of the trial court is reversed, and a decree will be entered against defendant in the principal sum of $14,-307.17, with interest on $400 from June 11, 1938, on $2,000 from March 10, 1941, and on $2,186.85 from January 13, 1941, and on $9,720.32 from March 10, 1941.

*Reversed and final decree.*