## Staunton

### BANKERS FIRE INSURANCE COMPANY v. JOHN H. HENDERSON AND THOMAS E. WELCH, TRADING AS STANDARD CLEANERS.

September 8, 1954.

Record No. 4246.

Present, All the Justices.

The opinion states the case.

*Vivian L. Page,* for the appellant.

*Albert S. Lewis* and *Sidney Sacks,* for the appellees.

EGGLESTON, J., delivered the opinion of the court.

John H. Henderson and Thomas E. Welch, partners trading as Standard Cleaners, and herein referred to as the complainants, filed a bill in equity against Bankers Fire Insurance Company praying for reformation of two fire insurance policies which the agent of the Insurance Company had written to cover certain buildings and personal property owned by the complainants. The bill alleged, in substance, that it was the intention of the complainants and the agent of the Insurance Company to protect by such policies all of the buildings and the contents therein owned by the complainants and used in their business at 1218-1220 Church street, in the city of Norfolk, but that this had not been done. The prayer was that the policies be reformed or corrected to conform "to the true intention of the parties." After the defendant had filed an answer denying the allegation of the intended coverage in the policies, there was a

jury trial upon what the parties agreed were the pertinent issues, which resulted in a favorable verdict in each instance for the complainants. The decree granting the jury trial recited that such action was pursuant to Code, § 8-213. The trial court refused to set aside the verdict and entered a final decree granting the relief prayed for, which is before us on an appeal awarded the defendant Insurance Company.

The uncontradicted facts are that since 1938 the complainants have operated a cleaning and pressing establishment at 1218-1220 Church street, in the city of Norfolk. They acquired the land and buildings thereon by deed dated June 1, 1942, prior to which time they had rented the premises. The lot fronts approximately 33.60 feet on the east side of Church street and runs back between parallel lines to a depth of 120.50 feet.

At the time the complainants acquired the property, and since, the improvements have consisted of two units: a two-story brick building fronting on Church street, with a cinder-block extension in the rear; and immediately to the rear of the cinder-block extension, and separated therefrom by a six-foot private alley, a one-story galvanized iron building. The concrete floor in the cinder-block addition extends across the lane and under the metal building. The steam necessary to the operation of the plant is generated in the metal building and carried by pipes across the lane and into the main building. The steam irons, washers, and pressing machines are located in the metal building. Other parts of the equipment and machinery are located in the main building.

On October 9, 1952, the metal building and its contents were destroyed by fire. At the time of the fire the Bankers Fire Insurance Company had in effect these three policies on the buildings and equipment:

Policy No. 197730, in the sum of $2,000, for the period of three years from March 3, 1950, "on the two story brick building, with metal roof, occupied for mercantile purposes

below and apartments above, situated No. 1218-1220 on the east side of Church Street, in Norfolk, Virginia."

Policy No. 203660, in the sum of $5,000, for the period of three years from November 5, 1950, "on the contents consisting of the following items, Four Butler tumblers; One Butler Extractor; One metal cylinder washer 30 x 45; Two New York Pressing Machines; Two Hoffman Pressing Machines; Two Glider Pressing Machines; Two Cissel steam Irons, and Boards; One Dutton 35 H. P. Boiler, No. 038922, while located 1220½ Church Street, in Norfolk, Virginia, in the one story galvanized iron building."

Policy No. 241217, in the sum of $12,500, for the period of three years from April 25, 1952, "on contents on the first floor, including equipment, furniture and fixtures, located in the two story brick mercantile building, with approved roof, located 1218-1220 Church Street, Norfolk, Va."

The full amount of the loss under policy No. 203660, on the equipment stated to have been located at "1220½ Church Street, * * * in the one story galvanized iron building," has been paid and that policy is not involved in the present controversy.

The issue is whether it was the intent and agreement of the parties that policy No. 197730, in the sum of $2,000, stated to cover "the two story brick building, * * * situated No. 1218-1220 on the east side of Church Street," was also to cover the galvanized iron building destroyed by the fire, and whether by like intent and agreement of the parties, policy No. 241217 in the sum of $12,500, stated to cover "contents on the first floor, including the equipment, furniture and fixtures, located in the two story brick mercantile building, * * * located 1218-1220 Church Street," was also to cover the equipment and fixtures which at the time of the fire were located in the galvanized iron building.

The complainants contend that the galvanized iron building is "a unit in its plant," that it was so considered by them and the agent of the Insurance Company at the time the

policies were written, and that through the inadvertence or mistake of the agent the description of the property covered was not broad enough to cover this building and its contents. The Insurance Company contends that the galvanized iron building is a separate building, requiring a higher rate, and that neither it nor the contents therein were intended to be included in the two policies.

Each of these policies was written and countersigned by W. T. Mason, who for many years has conducted an insurance agency at Norfolk, and has been the agent of the defendant Insurance Company, with authority to solicit insurance and countersign policies in its name. For more than twenty years this agency had written, in the names of the present and former owners, the insurance on these premises which Mason had visited and with which he was familiar.

For the last ten years preceding the writing of these particular policies, Mason had given his attention to other matters and had left the conduct of the agency including the writing of policies, to his nephew, Archibald Reyes. The policies, however, were still countersigned by Mason as agent.

The undisputed evidence is that the galvanized iron building was on the lot when the complainants acquired it and that it has always been a unit in their plant. The correct numbering of the buildings and improvements on the lot is 1218-1220 Church street, and it is so described in the deed by which the complainants acquired the property. The galvanized iron building carries no separate number.

There is little direct evidence as to the circumstances under which policy No. 197730 covering the "building," in the sum of $2,000, was written. Reyes testified that it was a renewal of policies which had been previously written on the building from time to time.

Both complainants testified that Mason, who wrote the original policy on the building, was familiar with the premises, had been there many times, and knew that the galvanized iron building was a part of the plant. Although

Mason admitted having been on the premises, he denied that he had observed the galvanized iron building.

Reyes, who wrote the particular renewal in controversy, admitted that he had been on the premises many times and knew that the metal building was there and a part of the plant.

While policy No. 203660, insuring the equipment in the galvanized iron building in the sum of $5,000, the loss under which has been paid, gives the numbering of that building as "1220½ Church Street," Reyes, who wrote the policy, testified that he "couldn't say exactly" from what source he acquired the information that this was the correct number of the metal building, other than that it had been so stated in a previous policy written on the equipment therein. There is no evidence that either of the complainants ever saw this policy which was sent to the trustee to whom the loss was payable, or that either knew that the metal building had been described therein as "1220½ Church Street."

There is a conflict in the evidence as to the circumstances under which policy No. 241217, for the sum of $12,500, in which the insured property is described as the "contents on the first floor, including equipment, furniture and fixtures, located in the two story brick mercantile building, with approved roof, located 1218-1220 Church Street," was written. This policy was written shortly after the complainants had acquired considerable new equipment which had been delivered on the premises, but not installed, and on which they owed a balance of approximately $12,000.

Welch, one of the complainants, testified that he attended to the insurance matters for the firm; that in April, 1952, he got in touch with Reyes about insuring this new equipment; that Reyes came to the plant; that he (Welch) told Reyes that he desired a policy covering the new equipment and increasing that on the old; that Reyes listed the new equipment which had not been installed, but was temporarily located in the brick building; that they went together into the galvanized iron building where he (Welch) pointed out to

Reyes the old equipment on which he wanted additional insurance; that he and Reyes agreed that because the new equipment was to be located in the different sections of the buildings, the new policy in the sum of $12,500 should cover all of the equipment, wherever located, and that the amount of the new policy, plus the coverage in the $5,000 policy, No. 203660, would be sufficient for that purpose. Asked what Reyes told him "about the coverage," his reply was, "I was increasing the coverage from the beginning. I had $12,500 plus $5,000 to cover all equipment in both buildings." Thus, he said, it was agreed that the equipment was "completely covered in all parts of the two buildings."

It is undisputed that this $12,500 policy was never in the hands of the complainants, or either of them. As soon as it was written it was mailed by the agent to American Security & Trust Company of Washington, D. C., to whom the loss was made payable. The complainants were never advised of the description of the property as listed in the policy.

Reyes admitted that at the time this policy was written, he went to the complainants' plant and there saw Welch who told him that they had purchased some new equipment which he wanted insured; that he (Reyes) listed this new equipment; that it was then in the main building; that it had not been installed; that he was not told where it would be installed, whether in the same building or not; and that Welch said nothing about covering any equipment in the galvanized iron building, although he would have placed the additional insurance thereon if Welch had requested him to do so. Furthermore, he said, he did not intend, nor was it agreed between him and Welch, that the $12,500 policy was to cover any of the equipment in the metal building, but only the newly acquired equipment.

After Mason had denied that he was familiar with the premises and knew nothing about writing the policies in effect at the time of the fire, the complainants, over the objection of the defendant, offered in evidence a copy of a letter which Mason had written the Insurance Company

after the fire, and after a question had arisen as to the coverage under the policies, in which he said:

" * * * Both policies insure equipment, furniture and fixtures in buildings ordinarily considered as one building. The metal portion being in the rear of the brick portion only about 2 one-half feet passage way dividing them. The equipment, more or less was used interchangeable between the rooms of the buildings, except for the very heavy type and where the statutes prohibited use in buildings used as dwellings also.

"It was therefore my understanding and that of the assured, that the two policies amounting to $17,500.00 would include all equipment, furniture and fixtures used and owned by the assured in the property described."

During the cross-examination of Reyes, and over the like objection of the defendant, the complainants offered in evidence an affidavit executed by Reyes after the fire, in which he stated that he had written the three policies in effect at the time of the fire, after having examined the premises, that he knew the galvanized iron building was "directly behind the brick building on the same lot of land and known by the same street number," and that it was his intention to cover in these policies "the galvanized portion of the building and contents" therein.

The record recites that "pursuant to section 8-213 of the Code," the complainants requested, and without objection by the defendant were granted, a jury trial upon these issues which were framed by agreement of counsel:

"1. Were the complainants innocently mistaken in believing that policy #197730 * * * dated the 3d day of March, 1950, which described the property insured as: 'on the two story brick building * * * situated Number 1218-1220 on the east side of Church Street in Norfolk, Va.,' covered as well the building referred to as a one story galvanized iron building located at the rear of the building described in the policy as the building actually described in the policy and was there an inequitable omission of such a

description as would include the metal building in the rear?" If so,

"2. Was the defendant, through its agent, guilty of fraud or other inequitable conduct in omitting the description of the metal building in the rear of 1218-1220 Church Street?"

"3. Were the complainants innocently mistaken in believing that policy #241217 * * * dated on the 25th day of April, 1952, which described the property insured as: 'on contents on the first floor, including equipment, furniture and fixtures, * * * located #1218-1220 Church Street, Norfolk, Va.,' covered as well the building referred to as a one story galvanized iron building located at the rear of the building described in the policy as the building actually described in the policy and was there an inequitable omission of such a description as would include the metal building in the rear?" If so,

"4. Was the defendant, through its agent, guilty of fraud or other inequitable conduct in omitting the description of the metal building in the rear of 1218-1220 Church Street?"

On these issues the jury found for the complainants and the trial court refused to set the verdict aside.

It is well settled that equity has jurisdiction to reform written instruments "(1) Where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake; and (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties." *Shenandoah Valley R. R. Co.* v. *Dunlop*, 86 Va. 346, 351, 10 S. E. 239. See also, *Temple* v. *Virginia Auto Mutual Ins. Co.*, 181 Va. 561, 570, 25 S. E. (2d) 268, 271, 272; *Larchmont Properties* v. *Cooperman*, 195 Va. 784, 790, 791, 80 S. E. (2d) 733, 737, 738.

Obviously, the issues submitted to the jury were framed upon the second principle just stated, although the bill alleged a mutual mistake. There was no allegation, nor do

we find any evidence, of fraud or inequitable conduct on the part of the defendant's agent as will entitle the complainants to relief upon that principle. As is said in *American Fruit Product Co.* v. *Barrett*, 113 Minn. 22, 27, 128 N. W. 1009, 1011, "Inequitable conduct, as applied to cases [on contracts calling for reformation] consists in doing acts, or omitting things, or the making of representations, tending naturally to deceive as to the true interpretation of the contract, which the court finds to be unconscionable." See also, 76 C. J. S., Reformation of Instruments, § 29-b, pp. 371, 372.

While, as we have seen, there is evidence that the agent of the Insurance Company made a mistake in not writing the policies so as to conform to the intent of the parties, there is no evidence that he was guilty of fraud in so doing, or that he did, or omitted to do, anything which tended to deceive the complainants as to the true meaning or coverage of the policies, unless it be the slight evidence in Welch's statement that Reyes told him that the $12,500 policy would cover all of the equipment. Accordingly, we are of opinion that the trial court should have set aside the verdict of the jury, for the interrogatories as framed and submitted were not directed to the real issue between the parties as disclosed by the evidence.

But it does not follow that because of the insufficiency of the evidence to sustain the verdict of the jury upon the irrelevant issues submitted there must be a new jury trial. We agree with the argument in defendant's brief that this was not a case in which a jury trial was mandatory under Code, § 8-213. That section provides: "A plaintiff in equity may take issue upon a plea, and either party may have such issue tried by a jury." Here the defendant filed no plea upon which the complainants took issue. There were merely a bill and answer. Hence, Code, § 8-213, was inapplicable and the verdict was merely advisory. Code, § 8-214; Lile's Equity Pleading and Practice, 3d Ed., § 256, p. 147.

When the verdict of the jury on the immaterial issues is disregarded, as it should be, we are of opinion that the evidence clearly establishes that the complainants were entitled to reformation of the policies upon the first principle stated in *Shenandoah Valley R. R. Co.* v. *Dunlop, supra,* that is, "Where there has been an innocent omission * * * of a material stipulation, contrary to the intention of both parties, and under a mutual mistake."

In 6 Couch, Cyclopedia of Insurance Law, § 1392, p. 4991, we find the principle stated thus: "Where an agent is authorized to act in the premises, and through his mistake or fraud the policy fails to express the real contract between the parties, or if, by inadvertence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt as to the power of a court of equity to grant relief by a reformation of the contract; at least, in case there is no fraud or collusion between the agent and the insured. In other words, where a policy of insurance does not represent the intention of the parties solely because of some fault or negligence of the agent of the insurer, equity will reform it so as to make it express such intention." See also, 44 C. J. S., Insurance, § 279, pp. 1109-10-11-12; 29 Am. Jur., Insurance, § 242, p. 238.

A mistake of an agent concurred in by an insured is a mutual one affording a basis for reformation. As was said in *Mutual Life Ins. Co.* v. *Metzger*, 167 Md. 27, 172 A. 610, 611, 612: "The principle that mistake of one party alone, not a mutual or common mistake, will not be corrected by reformation, cannot prevent relief in this instance, for the mistake was a common one within the meaning of that rule. It is not meant by it that the error in drafting by the agent of one party cannot be relieved. Insurance policies are always drafted by agents of the company, but that fact does not interfere with correction of mistakes in drafting. 2 Cooley, Briefs on Insurance (2d Ed.) 1424. The mistake common to both parties which supports reformation in these

cases is in the supposition of both that their final writing states their agreement correctly."

There are many instances in this jurisdiction where policies have been reformed upon the application of this principle. Among them are, *Warner Moore & Co.* v. *Western Assurance Co.*, 103 Va. 391, 49 S. E. 499, where through the mistake of the agent, despite the agreement of the parties, a policy was written to cover the wrong building; *Temple* v. *Virginia Auto Mutual Ins. Co.*, *supra*, where through the mistake of the agent the policy, as written, failed to cover the motor vehicle agreed on; *Universal Ins. Co.* v. *Mouel*, 165 Va. 651, 183 S. E. 230, where through the mistake of the agent the owner of the property was stated to be the husband rather than the wife; *Dickenson County Bank* v. *Royal Exchange Assurance of London*, 157 Va. 94, 160 S. E. 13, 76 A. L. R. 1209, where through the mistake of the agent a standard mortgage clause was omitted from the policy.

We pointed out in *Temple* v. *Virginia Auto Mutual Ins. Co.*, *supra*, that a high degree of proof is necessary to obtain affirmative relief in cases of this nature, and that "the party alleging a mistake in a written instrument must show by evidence which leaves no reasonable doubt upon the mind of the court, not only of what the mistake consists, but the correction which should be made." (181 Va., at page 569, 25 S. E. (2d), at page 271.)

In our opinion the evidence adduced by the complainants measures up to these requirements and warrants the reformation of the policies as decreed by the lower court.

First, with respect to policy No. 197730 issued on March 3, 1950, and stated to cover "the two story brick building * * * situated No. 1218-1220 on the east side of Church Street." The evidence on behalf of the complainants shows that their plant consists of two contiguous units—the brick building and the galvanized iron building in the rear, which have been described. The entire premises are known and numbered as 1218-1220 Church street. Both the agent,

Mason, who wrote the original policy on the property in 1938, as well as his employee, Reyes, who wrote the policy in effect at the time of the fire, had been on the premises and were familiar with the layout. If they made any examination of the premises at all, as they said they did, they are bound to have observed that the galvanized iron building was a unit of the plant. Indeed, Reyes admitted that he knew this.

It is entirely unlikely that the complainants who appreciated their need for protection, as is shown by the amount of insurance which they had taken out, would have been satisfied with, or that an experienced agent would have written, a policy which covered only a portion of the premises, leaving entirely unprotected a vital unit, the one in which steam for the operation of the plant was generated and the very one in which a fire was most likely to occur.

It is significant that Reyes made no claim in his testimony that this policy was not intended to cover the metal building as a unit of the complainants' plant.

The circumstances under which policy No. 241217, in the sum of $12,500, was written have been related and will not be repeated. According to the clear and positive testimony of Welch, this policy was intended to cover the equipment which was in operation in the galvanized iron building, as well as the newly acquired equipment which had not been installed but was temporarily located in the front portion of the building.

Reyes' denial that it was his intention to cover in this policy any of the equipment in the galvanized iron building is in direct conflict with the statement in his affidavit that such coverage was intended. It is true that he stated that he had signed the affidavit upon the mistaken belief that counsel for the Insurance Company had agreed to the facts therein stated. Such an attempted repudiation of a sworn statement needs no comment.

■ The defendant argues that both Mason's letter and Reyes' affidavit were inadmissible in evidence. It is, of course, well settled that the extrajudicial declarations and admissions of an agent made after the completion of the transaction in which he was engaged are hearsay and inadmissible to bind the principal. This is so because such declarations and admissions are not a part of the *res gestae*, and because it is beyond the scope of the agent's authority to bind his principal by such admissions. Greenleaf on Evidence, 16th Ed., § 184-c, pp. 308, 309; 31 C. J. S., Evidence, § 346, pp. 1120, 1121; *Id.*, § 351-a, p. 1124; 20 Am. Jur., Evidence, § 599, pp. 510, 511; 29 Am. Jur., Insurance, § 1473, pp. 1103, 1104; 8 Couch, Cyclopedia of Insurance Law, § 2205, p. 7134; 1 Mich. Jur., Agency, § 115, p. 353 *ff*. Hence, the declarations and admissions of the agent, Mason, and those of his employee, Reyes, made after the policies had been written, were inadmissible as substantive evidence against the Insurance Company to prove the intended coverage under the policies.

While the application of this principle excludes such letter and affidavit as substantive evidence, it is elementary that both were admissible to contradict and discredit the testimony of these two witnesses offered on behalf of their principal, the Insurance Company. Mason's letter refutes his testimony that he was unfamiliar with the premises and did not know of the metal building. Reyes' affidavit refutes his testimony that coverage under the $12,500 policy was not to extend to the equipment in the metal building.

The defendant argues that since policy No. 203660, in the sum of $5,000, which specifically covered the equipment in the galvanized iron building, shows on its face that it carried a higher rate than that specified in the two policies here in controversy, that fact should have put the complainants on notice that the latter policies did not cover the galvanized iron building, or the equipment therein. But the undisputed evidence is that neither the policy which specifically covered the equipment in the galvanized iron building, in the sum of

$5,000, nor policy No. 241217, in the sum of $12,500, stated to cover the equipment in the "two story brick mercantile building," came into the hands of the complainants, or was seen by them. As has been said, both of these policies, as soon as written, were forwarded to the trustees for the parties which held liens on the equipment. Therefore, neither of the complainants knew that these policies were written at different rates.

But aside from this, it is well settled that "The negligent failure of a party to know or discover the facts, as to which both parties are under a mistake does not preclude rescission or reformation on account thereof." Restatement of the Law of Contracts, Vol. 2, § 508, p. 977. See also, *Dickenson County Bank* v. *Royal Exchange Assurance of London, supra,* 157 Va., at page 111.

The view we have taken of the matter makes it unnecessary that we review the assignments of error challenging the correctness of the trial court's rulings on the instructions and other procedural matters before the jury.

On the whole, being of opinion that the decree of the lower court, granting a reformation of the policies as prayed for in the bill, is amply supported by the law and the evidence, it is

*Affirmed.*