**In re Robert Louis CLEVELAND, Jr., Debtor.**

**UNITED VIRGINIA BANK, Plaintiff,**

**v.**

**Robert Louis CLEVELAND, Jr., Defendant.**

**Bankruptcy No. 83–00800–A.
Adv. No. 84–0020–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 11, 1985.

Ronald L. Walutes, Annandale, Va., for debtor.

John H. Rust, Jr., Thomas & Fiske, Alexandria, Va., for United Virginia Bank.

Duncan W. Keir, W. Peyton George, Miles & Stockbridge, Baltimore, Md., for Equitable Bank, N.A.

Robert O. Tyler, Williams, Myles & Quiggle, Alexandria, Va., trustee in bankruptcy.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

The instant matter arises out of a Complaint to Determine Dischargeability of a Debt filed by United Virginia Bank ("UVB") pursuant to section 523(a) of the Bankruptcy Reform Act of 1978 ("the Code"), 11 U.S.C. § 101, *et seq.*[1] Subsequent to the filing of the complaint, UVB and the defendant, Robert Louis Cleveland, Jr. ("debtor" or "Cleveland"), agreed to a settlement of the adversary proceeding. Prior to the approval of the settlement agreement by this Court, Equitable Bank, National Association ("Equitable") was allowed to intervene by order of this Court. A hearing was held on the proposed settlement and Equitable's objection thereto on

---

1. Plaintiff prays for a finding of nondischargeability based on sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of Title 11 of the United States Code. Pursuant to those respective sections, a debt is excepted from discharge when a debtor: receives money, property, services or an extension of credit based on "false pretenses, a false representation, or actual fraud"; incurs a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"; or incurs a debt "for willful and malicious injury...." 11 U.S.C. § 523(a)(2)(A), 523(a)(4), 523(a)(6).

May 2, 1984. The Court took the matter under advisement, requesting the submission of memoranda by all parties.

With one major exception, the facts of this case are undisputed. In March 1982, the debtor purchased the interest of Jeffrey and Nancy Ocean in a lot of commercial real estate known as 513 Maple Avenue West, Vienna, Virginia, which he co-owned with Jeffrey Ocean. As a part of the sales agreement, Ocean and his wife agreed to accept a deed of trust promissory note in the amount of fifty thousand dollars from Cleveland. The note was to be secured by a deed of trust in favor of the Oceans which was to constitute a valid encumbrance on the Maple Avenue property. Cleveland prepared and recorded a Deed which conveyed the property from the Oceans to Cleveland and his spouse as tenants by the entirety rather than to Cleveland individually. Furthermore, Cleveland prepared, executed and recorded a Deed of Trust purporting to secure the promissory note payable to the Oceans. Because Cleveland's spouse, Pamela Cleveland, did not sign the Deed of Trust, the Oceans did not receive a valid security interest in the property. UVB is the successor in interest of the Oceans by an assignment dated January 13, 1984, of all of the Oceans' right, title and interest to any and all claims and demands against Cleveland, including those arising out of the Oceans' sale of the property to Cleveland.

The parties disagree as to how a deed was prepared and recorded naming Robert and Pamela Cleveland as grantees while a deed of trust was prepared and recorded naming only Robert Cleveland as trustor and signatory. During the trial in this matter, Cleveland testified that his secretary had made an error in preparing the Deed of Trust in that his wife was omitted as a trustor and signatory. The *de bene esse* deposition of Jeffrey Ocean ("Ocean") admitted into evidence in this proceeding indicates that the Deed later admitted into evidence during the trial was not the original instrument. Ocean stated in the sworn deposition that the grantee in the Deed that he and his wife signed was the debtor

individually. Ocean further stated under oath that the Deed naming only Cleveland as grantee was in accordance with the agreement of the parties. Moreover, Ocean testified that despite his several requests Cleveland did not send him a copy of the fully executed document. As a result, both UVB and Equitable have alleged that Cleveland substituted for the first page of the Deed naming Cleveland as the sole grantee a page naming both Cleveland and his spouse as grantees as tenants by the entireties.

Subsequent to filing its complaint under section 523(a) of the Code, UVB has agreed with the debtor to a settlement of the adversary proceeding. The parties have agreed to request that this Court grant a petition to reform the Deed of Trust whereby Pamela Cleveland may be named as trustor and signatory. The parties represent that this reformation will place the Deed of Trust in conformance with the intent of the parties such that the Deed of Trust will secure UVB's position, as the Oceans' assignee, in the Maple Avenue property.

Equitable objects to reformation of the Deed of Trust. Equitable contends that reformation can only be based on a mutual mistake of fact of the contracting parties or on the mistake of one party accompanied by fraud or other inequitable conduct on behalf of the other party. Contesting the debtor's claim that a mutual mistake of fact occurred, Equitable states that the facts of the case actually indicate that Cleveland acted fraudulently. As a result, Equitable maintains that only the instrument affected by the fraudulent conduct of Cleveland, the Deed, may be reformed.

UVB takes the position that reformation of the Deed of Trust is the most appropriate mechanism for carrying out the intent of the parties. By reforming the Deed, UVB claims that Equitable will be getting a windfall in that the UVB Deed of Trust would then be subject to Pamela Cleveland's dower interest in the Maple Avenue property. Equitable's Deed of Trust would

not be subject to the dower interest in that it contains the signatures of both the Clevelands. UVB argues that it is clear that Equitable did not rely on the omission of Pamela Cleveland's signature on the Deed of Trust when taking its fourth lien on the property.

UVB also argues that Equitable has no standing to prevent the reformation. The foundation for this position is that Equitable has failed to show that it has an interest in the subject property or that it gave any value for any such interest. Moreover, UVB maintains that even if Equitable is a purchaser for value, it took any interest it had in the Maple Avenue property with notice of the rights of UVB based upon the recordation of the Ocean Deed of Trust which was later assigned to UVB.

The debtor adopts the position taken by UVB except for the Bank's claim that the deed conveying the Maple Avenue property to Cleveland and his spouse as tenants by the entirety was recorded without the Oceans' knowledge and consent. As indicated previously, debtor argues that a transfer of the Maple Avenue property by the Oceans to both Cleveland and his spouse was the intent of the parties all along but that the Deed of Trust was prepared incorrectly. Furthermore, debtor argues that the Deed may not be reformed because debtor's wife, Pamela Cleveland, is an indispensable party in this proceeding and she has not been made a party defendant.

■ The issue with respect to Equitable's standing can be disposed of preliminarily. Initially, it was the ruling of this Court on May 2, 1984, prior to the hearing on the merits of the instant case, that Equitable should be allowed to intervene based upon its having a fourth Deed of Trust on the Maple Avenue property. Furthermore, in its memorandum of law filed May 2, 1984, UVB admits that Equitable is the holder of such an interest. Holding a Deed of Trust on the Maple Avenue property clearly gives Equitable the right to intervene and contest the settlement agreement. *See* Fed.R.Civ.P. 24(a)(2).

■ Parol evidence is admissible in certain limited circumstances to reform a legal instrument which does not adequately represent the intent of the parties creating the instrument. *Audio Fidelity v. Pension Benefit Guaranty Corp.*, 624 F.2d 513, 517–18 (4th Cir.1980); *Clarksburg Trust Co. v. Commercial Cas. Ins. Co.*, 40 F.2d 626, 632 (4th Cir.1930). A court of equity may reform a document in instances in which there has been a mutual mistake of fact or in which the mistake of one party was accompanied by the other party's fraud or other inequitable conduct. *Audio Fidelity v. Pension Benefit Guaranty Corporation*, 624 F.2d at 517–18; *Temple v. Virginia Auto Mut. Ins. Co.*, 181 Va. 561, 569, 25 S.E.2d 268 (1943); *Shenandoah Valley R. Co. v. Dunlop*, 86 Va. 346, 351–52, 10 S.E. 239 (1889).

Because a legal instrument is assumed to represent the intent of the contracting parties, the party alleging a mistake in the written instrument must put forward evidence of such a clear, convincing and satisfactory character so as to leave no reasonable doubt in the mind of the court, not only of the nature of the mistake, but also the correction which should be made. *See, e.g., State Farm Mut. Automobile Ins. Co. v. Miller*, 194 Va. 589, 594, 74 S.E.2d 145 (1953); *Temple v. Virginia Auto Mut. Ins. Co.*, 181 Va. at 569, 25 S.E.2d 268; *Charles v. Charles*, 127 Va. 604, 610–11, 104 S.E. 823 (1920) and cases cited therein.

Reformation is available as an equitable remedy in the appropriate circumstances as to any written document, not being limited to a particular class or kind of instrument. *Larchmont Properties v. Cooperman*, 195 Va. 784, 791, 80 S.E.2d 733 (1954). *See generally* 66 Am.Jur.2d *Reformation of Instruments* § 29, 556 (1973).

■ UVB argues that Ocean and Cleveland intended to place a valid trust on the property. Because the Deed of Trust names only Cleveland as trustor and signatory and because the Deed names both the

debtor and his spouse as grantees, Ocean, and subsequently UVB, do not have a valid security interest in the property. As indicated earlier, UVB and the debtor have the burden of showing the intent of the parties and of producing evidence of the correction which should be made to fulfill that intent. *Temple v. Virginia Auto Mut. Ins. Co.*, 181 Va. at 569, 25 S.E.2d 268. The evidence does not support the existence of a mutual mistake of fact which UVB alleges in support of its prayer for reformation.

The Agreement of Sale evidences an agreement between the Oceans and the debtor individually whereby the Oceans agreed to convey the Maple Avenue property to Cleveland for $100,000.00. The Deed of Trust note shows that only the debtor was obligated to pay the $50,000.00 balance of the purchase price. Finally, the Deed of Trust names only the debtor as trustor. All three of these documents were drawn up by Cleveland, although there were some minor changes incorporated in the Agreement of Sale based on the suggestion of Ocean's counsel. These modifications, however, did not change the parties to the agreement. The Deed, also prepared by Cleveland, names both Cleveland and his spouse as grantees, thus rendering the document clearly inconsistent with the Agreement of Sale.

In his *de bene esse* deposition, taken under oath and admitted into evidence, Ocean stated that the parties intended that the property be conveyed only to Cleveland in accordance with the Agreement of Sale. When Ocean was shown a photocopy of the Deed naming both Cleveland and his spouse as grantees, he stated that Pamela Cleveland was not on the Deed that he had signed but that, again in accordance with the Agreement of Sale, Robert Cleveland was the only grantee on the Deed.

In response to certain questions, Ocean stated that he had intended to take a security interest subordinate only to the existing first and second trusts. Ocean did not intend to take a security interest in the Maple Avenue property subordinate to the dower rights of Pamela Cleveland. Yet when questioned about the Deed of Trust, the following exchange took place:

Q. [By Mr. Keir, counsel to Equitable.] Was this Deed of Trust the original of this Deed of Trust, Exhibit 6, delivered to you?

A. [By Mr. Ocean.] Yes it was.

Q. Who drew the Deed of Trust?

A. Mr. Cleveland.

Q. Do you know why Mr. Cleveland only signed the Deed of Trust?

A. Because the original agreement called for Mr. Cleveland to sign it.

Q. Do you know why his wife didn't sign it to convey her dower to the end of the lien?

A. No, I don't recall why.

Q. Was there ever any discussion that you had with Mr. Cleveland or anyone else concerning whether or not you would take a lien on the property back, subject to her dower interest?

A. There was some discussion. I don't remember the specifics of it.

Obviously, there is a direct conflict in the testimony of the debtor and in the deposition of Ocean. In weighing the testimony, the following considerations are relevant. During a section 341 meeting conducted on November 23, 1983, Cleveland testified that he knew from the very beginning that the Deed of Trust was only in his name but that the Deed was in both his and his spouse's name. Furthermore, Cleveland testified that although he did not have the sales agreement before him he did not believe that it called for a valid Deed of Trust on the property. When questioned about the Deed of Trust during the section 341 meeting, the following exchange took place:

Q. [By Mr. Glazer, counsel to the Oceans.] Are you [Mr. Cleveland] generally involved in real estate matters? When real estate closes?

A. [By Mr. Cleveland.] I do some real estate closings.

Q. So, you knew at the time that they [the Oceans] did not have a valid deed of trust. Correct?

A. Jeff [Ocean] was a real estate broker. He knew at the time what the arrangements were.

Q. I'm asking you. Did you know ...

A. It was understood between the parties exactly what was being done.

Q. So, you knew at the time it was not a valid deed of trust? You admit ...

[By Ms. Ferguson, former counsel to debtor.]

It is not clear what a valid deed of trust means in your terms or as to what Mr. Cleveland means as to his terms. He has told you that he signed what was agreed upon. That is about as far as you are going to go with that.

[By Mr. Glazer.]

But he also stated, I think, for the record that at the time of the settlement he knew that the deed was drafted in the names of Cleveland and wife and that the deed of trust was only in the name of Cleveland.

[By Ms. Ferguson.]

I think he can answer that one.

A. [By Mr. Cleveland.]

I think that speaks for itself. The documents speak for themselves.

Although the above exchange is not particularly helpful, it does illustrate some relevant aspects of this proceeding. Initially, Cleveland devotes, as he later testified, approximately thirty-five percent of his professional time to a real estate practice. Thus, it is difficult to understand how he could have failed to notice the inconsistencies between the Deed and the Deed of Trust. Additionally, there exists a contradiction between his testimony at the section 341 meeting and his testimony before this Court as to when he discovered that inconsistency. As a matter of fact, Cleveland's statements at the section 341 meeting indicate that both he and Ocean were aware of the inconsistencies in the instruments at the time they were drawn up and that the instruments were in keeping with their agreement. Secondly, if the Deed of Trust was the result of a mutual mistake of fact, Cleveland did not take the natural step at the time of the section 341 meeting to testify as to the existence of that mistake. In fact, Cleveland did just the opposite, testifying that the instruments were in accordance with the "arrangements".

■ Based on the foregoing, it can hardly be said that UVB or the debtor have satisfied their burden of showing that a mutual mistake of fact led to the failure to include Pamela Cleveland as a trustor on the Deed of Trust. Nor can it be said that UVB has shown beyond a reasonable doubt that reformation of the Deed of Trust will structure the transaction as the parties intended. *See Temple v. Virginia Auto Mutual Ins. Co.*, 181 Va. at 569, 25 S.E.2d 268. In fact, the clearest indicator of the parties' intent must be the Agreement of Sale. That document indicates that the Oceans intended to sell their interest in the Maple Avenue property solely to Robert L. Cleveland, Jr. All of the relevant documents, except for the Deed, are in keeping with this expressed intent.

With respect to the Deed, Ocean has testified unequivocally that the Deed he signed named only Cleveland as the grantee. This testimony is consistent with the terms of the Agreement of Sale. Although Cleveland denies substituting a replacement first page to the Deed, the second page being the only page signed by the Oceans, Cleveland's testimony is replete with inconsistencies and outright contradictions. If, in fact, Cleveland fraudulently replaced the original first page of the Deed, the most appropriate remedy would be to reform the Deed, rather than the Deed of Trust. By reforming the Deed, all of the documents would be in keeping with the intent of the parties as expressed in the Agreement of Sale.

■ UVB, as the Oceans' assignee, stands in the shoes of the Oceans, taking no better a position than that occupied by its assignors. *Hartford Fire Ins. Co. v. Mutual Savings and Loan Co.*, 193 Va. 269, 277, 68 S.E.2d 541 (1952). *See gener-*

*ally* 2A M.J., *Assignments*, § 29, 228–29 (Repl.Vol.1980). Ocean testified that he intended to receive a security interest in the Maple Avenue property subordinate only to the existing first and second trusts. Clearly, however, Ocean was not very familiar with what was necessary to achieve that position. If the parties structured the conveyance as they intended and the intended result was not obtained, a mistake of law existed, not a mistake of fact. Reformation cannot be based on a mistake of law unless the mistake goes to the meaning of the language used in the instrument. *Griswold v. Hazard*, 141 U.S. 260, 283–85, 11 S.Ct. 972, 979, 35 L.Ed. 678 (1891); *Clarksburg Trust Co. v. Commercial Cas. Ins. Co.*, 40 F.2d 626, 629–30 (4th Cir.1930). This exception to the general prohibition against reformation based on a mistake of law does not exist in the instant case.

Debtor argues that reformation of the Deed would not be possible because Pamela Cleveland is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. Pursuant to Rule 7019 of the Rules of Bankruptcy Procedure, Rule 19 applies to adversary proceedings in bankruptcy. R.Bankr.P. 7019. Rule 19 sets forth the procedure to be followed by a court with respect to joinder of persons necessary for a just adjudication.[2]

■■■ Rule 19 contains an initial two-step inquiry. Fed.R.Civ.P. 19(a), (b). *See generally* 3A *Moore's Federal Practice* ¶ 19.07, 19–90 to 19–108 (2d ed. 1985). Initially, the court must determine whether the absent person's joinder is feasible under Rule 19(a). If joinder is feasible, a determination of indispensability under Rule 19(b) is not required. *Hill v. Liberty Mut. Ins. Co.*, 453 F.Supp. 1342, 1345 n. 1

(E.D.Va.1978). In other words, a person is indispensable only when his joinder is not feasible under Rule 19(a), and in his absence, dismissal of the case is preferable to adjudication. *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 24 n. 4 (6th Cir.1980) (per curiam); *see* 3A *Moore's Federal Practice* ¶ 19.07, 19–90 to 19–91 (2d ed. 1985). When a person's joinder is feasible, that person is a necessary party rather than an indispensable party. *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d at 24 n. 4.

■■■ Joinder is not feasible when the person is not subject to service of process or when the joinder would deprive the court of subject matter jurisdiction. 3A *Moore's Federal Practice* ¶ 19.07, 19–91 (2d ed. 1985). In the instant case, there is no doubt but that Pamela Cleveland is subject to service of process. Joinder of Pamela Cleveland, however, may well affect the subject matter jurisdiction of this Court. Pamela Cleveland is a non-debtor, Equitable and UVB are non-debtors and reformation of a Deed is governed by state law. Furthermore, there is no evidence that Pamela Cleveland would consent to the jurisdiction of this Court.

When joinder is not feasible, this Court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). One of the factors to be considered under Rule 19(b) is "to what extent a judgment rendered in the person's absence

---

2. Rule 19 of the Federal Rules of Civil Procedure states in pertinent part:

    (a) *Persons to be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposi-

tion of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

Fed.R.Civ.P. 19(a).

might be prejudicial to him or those already parties...." *Id.* This factor is similar to the concern expressed in Rule 19(a)(2)(i) which requires joinder, if feasible, when the person claims an interest in the subject matter of the litigation and the disposition may "as a practical matter" impair or impede the person's ability to protect that interest. Fed.R.Civ.P. 19(a)(2)(i). Courts, including several in the Fourth Circuit, have interpreted the language of Rule 19(a)(2)(i) to mean that joinder is not required when the absent person's interests are fully protected by an existing party. *See, e.g., Owens-Illinois, Inc. v. Lake Shore Land Co.,* 610 F.2d 1185, 1191 (3rd Cir.1979); *Fetzer v. Cities Service Oil Co.,* 572 F.2d 1250, 1255 (8th Cir.1978); *Hill v. Liberty Mut. Ins. Co.,* 453 F.Supp. 1342, 1344 (E.D.Va.1978). *See generally* 3A *Moore's Federal Practice* ¶ 19–106 to 19–108 (2d ed. 1985).

In the instant case, the Court concludes that Pamela Cleveland's interest in the Maple Avenue property is fully protected by the debtor, her husband. Furthermore, after considering the factors listed in Rule 19(b), the Court feels that "in equity and good conscience" this matter should proceed to judgment.

■ For the reasons set forth above, this Court finds that UVB and the debtor have failed to meet their burden of showing that a mutual mistake of fact led to Pamela Cleveland being left off the Deed of Trust as a signatory and trustor. Moreover, the evidence adduced at trial clearly demonstrates that the debtor and Jeffrey Ocean intended to convey the Maple Avenue property to Cleveland individually and that the debtor fraudulently changed the Deed to include both him and his spouse as grantees. In order for the documents to reflect the intent of the parties, this Court will order that the Deed be reformed to name only Robert Louis Cleveland, Jr. as grantee.

An appropriate Order will enter.